OPINION OF THE COURT
Levine, J.
Defendant Shannon Siegel was convicted, after a jury trial, of various felony and misdemeanor charges in connection with a life-threatening assault on an African-American teenager by -a group of white young men.
The events that gave rise to defendant’s conviction began at a large party in Atlantic Beach, Long Island, which defendant *540 attended with Gourdin Heller, a neighborhood friend, and four young men from Bayside, Queens — David Donahue, Gregory Kussoff, Ian Pearl and James Peralta. According to the People’s proof, while at the party, defendant was accused of using a racial epithet to refer to Jermaine Ewell, who was dating a former girlfriend of defendant. A confrontation between Ewell and defendant erupted. Defendant then left the party with Heller, the young men from Bayside, and two young women. They were chased by a large group of Ewell’s friends. Defendant spoke with Heller and then drove away with the two young women while Heller remained. The young men from Bayside left in another car and rendezvoused at defendant’s house where they collected stickball bats and discussed what they should do in response to the incident at the party. Ultimately, they decided to drive back to the Atlantic Beach boardwalk in the vicinity of the site of the party.
By the time they returned, many of the young people who had attended the party had gathered on the boardwalk, including Ewell, who was talking to defendant’s former girlfriend near the top of the boardwalk ramp.
According to prosecution witnesses, defendant approached Ewell from behind and hit him on the back of his head with a bat. As Ewell lay on the ground, he was repeatedly beaten with the bats and sticks, suffering multiple skull fractures. Two young white men, Anthony Franzese and Stephen Lieberman, attempted to intervene on Ewell’s behalf but they were attacked with bats and sticks as well. Defendant and the other attackers then fled. Ewell was brought to a hospital where he underwent emergency surgery to remove a blood clot from his brain; though severely injured by the attack, he survived.
Defendant was charged in a nine-count indictment, along with codefendants Donahue, Kussoff, Pearl, and Peralta, with various offenses arising out of the attack, including attempted murder, assault in the first and second degrees, riot, conspiracy, racially motivated aggravated harassment, criminal possession of a weapon and misdemeanor violations of the Civil Rights Law. Eleven witnesses, including the complainants and Donahue, who had pleaded guilty to a misdemeanor riot charge, testified as to defendant’s active role in the assault.
Defendant testified on his own behalf. He explained that he had been scared by the large threatening crowd that had chased him and that he returned to the boardwalk not to attack Ewell, but to locate Gourdin Heller who had told him, as they were being chased from the party, that if they became *541 separated defendant should meet him back at the boardwalk. According to defendant, he intended to use his bat only in a defensive manner in the event there was additional trouble, and that it was not he, but rather Peralta and his friends from Bayside who were motivated to "take care” of the crowd that had chased them from the party. Defendant further testified that when they arrived at the boardwalk Peralta and the others ran ahead of him and that when he joined the crowd on the ramp in search of Heller, the attack on Ewell had already begun.
Defendant was convicted of assault, first and second degrees, conspiracy in the fourth degree, riot in the second degree, and possession of a weapon in the fourth degree. The Appellate Division affirmed the judgment of conviction and sentence (207 AD2d 919). The Chief Judge of this Court granted defendant leave to appeal, and we now affirm.
On appeal to this Court, the primary issues relied upon by defendant in urging reversal relate to the trial court’s treatment of the assertion by Gourdin Heller of his Fifth Amendment privilege against self-incrimination during his cross-examination as a defense witness.
Gourdin Heller was an important defense witness; his testimony on direct examination corroborated defendant’s position that he did not return to the boardwalk with the intention of causing bodily harm to Ewell or others, but that he returned only to locate and, if need be, assist Heller. Thus, Heller testified that when events at the party escalated, defendant told him that if anything was to happen he would look for Heller later at the boardwalk. Heller also indicated that Ewell was the aggressor in his initial confrontation with defendant at the party.
On cross-examination, however, Heller’s credibility became the focus of an immediate attack. In addition to revealing that portions of Heller’s trial testimony as to collateral matters were inconsistent with prior statements he had made in connection with the case, the prosecutor also elicited testimony from Heller demonstrating a variance between his trial testimony and his prior Grand Jury testimony as to a material matter — whether the attack by defendant and his companions was racially motivated. At that point, the court expressed concern that Heller was in danger of committing the crime of first degree perjury and accordingly, over a defense objection and outside the presence of the jury, the court explained to Heller the potential legal consequences of such inconsistent *542 testimony and asked Heller if he would like to consult with counsel before continuing his cross-examination testimony. At Heller’s request, an attorney was assigned to represent him and the court agreed to postpone the completion of cross-examination. At the next scheduled day of trial, Heller’s counsel informed the court that Heller could testify further, but would refuse to answer certain questions concerning the incident and the subsequent investigation, and that as to those questions he would assert his Fifth Amendment privilege against self-incrimination. Again over defense objection, the court ruled that Heller would be questioned in front of the jury. Heller then returned to the witness stand, but in response to a question regarding his prior trial testimony, he asserted his Fifth Amendment privilege and refused to answer. After Heller refused to answer the next few specific questions, he indicated that he would continue to assert the privilege as to all interrogation regarding the events he had testified to on direct examination, and the court ordered the termination of further cross-examination.
Although the court had earlier informed the prosecution that it could move to strike all of Heller’s testimony, no motion to strike was made. However, at the People’s request, the court in instructing the jury explained that every witness has the right to invoke his or her Fifth Amendment privilege against self-incrimination, and then, over defendant’s objection, charged: "[T]he mere fact that a witness invokes his right does not give rise to any inference. However, you may consider it on the issue of witness’ credibility”.
Defendant maintains that the trial court committed four separate errors in connection with Heller’s testimony: first, that by warning Heller of the consequences of giving inconsistent sworn testimony and by advising him that he could consult with an attorney on this issue, the court improperly intimidated Heller into invoking the privilege; second, that the court erred in requiring Heller to invoke the privilege in the presence of the jury; third, that the court erred in instructing the jury it could consider a witness’ refusal to testify on Fifth Amendment grounds on the issue of credibility; and fourth, that the court permitted the prosection to improperly comment on Heller’s refusal to testify during his closing arguments.
We find no error committed by the trial court’s treatment of Heller’s testimony in any respect. Our precedents approve the conduct of a trial court in advising a witness, who it can be *543 reasonably anticipated will give self-incriminating testimony, of the possible legal consequences of giving such testimony and of the witness’ Fifth Amendment privilege to refuse to testify (see, People v Lee, 58 NY2d 773, 775; see also, People v Shapiro, 50 NY2d 747, 761-762).
To be sure, there are limitations upon the exercise of that authority. Thus, a defense witness may not be singled out in advance of giving any testimony and threatened by the court with the punitive consequences of giving perjured testimony that the court will personally administer (see, Webb v Texas, 409 US 95, 97-98; People v Ramos, 63 AD2d 1009). Nor may the court repeatedly badger a witness into remaining silent or actively encourage a witness not to testify (see, United States v Arthur, 949 F2d 211, 215-216 [6th Cir]). None of these abuses of a trial court’s discretion to advise a witness of possible self-incrimination is present in the instant case. Heller was not deterred from testifying for the defense, since the trial court’s intervention did not occur until after Heller had given all of his favorable direct testimony. Moreover, the court did not anticipate in advance the possibility of Heller incriminating himself on the witness stand. It was only after Heller was directly shown to have given opposing sworn testimony on the same facts at the trial and before the Grand Jury that the court interrupted his testimony on cross-examination to advise him of the possibility of prosecution for perjury as a result of his conflicting versions of the same events. The court did not advise Heller not to testify, but suspended further cross-examination until Heller had an opportunity to seek advice from an attorney the court assigned at his request.
The remaining objections to the treatment of Heller’s assertion of his Fifth Amendment privilege turn essentially on the trial court’s conclusion that Heller’s refusal to answer questions on self-incrimination grounds could be considered by the jury in weighing his credibility. We hold that, in the circumstances of this case, the trial court was correct. Most certainly, Heller’s direct testimony was favorable to defendant. Also beyond contest is that when Heller indicated he would continue to assert his privilege to remain silent as to all questions regarding the subject matter of his direct testimony and was then excused from the witness stand, the prosecution was effectively deprived of the right of cross-examination to test the truth of Heller’s entire direct testimony. Under such circumstances, the prosecution was entitled to have Heller’s direct testimony stricken in its entirety and the jury instructed to *544 disregard it (see, People v Chin, 67 NY2d 22, 28; see also, Lawson v Murray, 837 F2d 653, 655-656 [4th Cir] [defense witness’ direct testimony stricken], cert denied 488 US 831).
The important precedents on this subject do not, however, regard striking all of the witness’ testimony as the exclusive remedy when cross-examination has been thwarted by the assertion of the privilege against self-incrimination. On the contrary, striking the witness’ entire testimony is considered the most drastic relief. As we held in Chin, the trial court has wide discretion in fashioning the appropriate corrective response, depending on the degree of prejudice that was incurred by the party whose right of cross-examination of the witness was impaired by the claim of the privilege (67 NY2d, at 29, supra).
In Chin, we recognized one of the alternative less drastic remedies when cross-examination has been blocked by the witness’ exercise of the privilege against self-incrimination — striking only some but not all of the testimony (id., at 28). In the leading case of United States v Cardillo (316 F2d 606 [2d Cir], cert denied 375 US 822, 887), the court posed three graduated levels of remedial action. The first is where the witness refused to testify on questions of matters "so closely related to the commission of the crime that the entire testimony of the witness should be stricken” (id., at 613). The second is where the refusal to answer was "connected solely with one phase of the case in which event a partial striking might suffice” (id.). The third and least drastic relief "would involve collateral matters or cumulative testimony concerning credibility which would not require a direction to strike and which could be handled (in a jury case) by the judge’s charge if questions as to the weight to be ascribed to such testimony arose" (id. [emphasis supplied]).
McCormick agrees with the Cardillo analysis, stating that where the witness invokes the privilege on collateral matters such as relating to general credibility "[t]he trial judge can properly consider measures short of striking the witness’s direct testimony, such as having the witness invoke the privilege before the jury or instructing the jury to consider the testimony in light of the defendant’s reduced ability to cross-examine" (1 McCormick, Evidence § 140, at 526-527 [4th ed] [emphasis supplied]; see also, United States v Stephens, 492 F2d 1367, 1374-1375 [6th Cir] [applying the three-level analysis], cert denied 419 US 852, 874; People v Holguin, 141 Mich App 268, 367 NW2d 846, 848 [same]). Less severe alternatives are particularly worthy of consideration when a defense witness *545 has invoked the privilege, in view of the defendant’s Sixth Amendment right to present testimony (1 McCormick, op. cit., § 140, at 527 [4th ed]).
Since (as we have shown) the trial court would have been justified in striking all of Heller’s direct testimony with instructions to the jury completely to disregard it, defendant is hardly in a position to complain of the less drastic remedy the court applied for the deprivation of the People’s right of cross-examination, inviting the jury to consider its bearing on Heller’s credibility. We note that the court properly charged the jury that his assertion of the privilege did not justify an inference on the merits of the case.
The trial court’s choice of advising the jury that it could consider Heller’s invocation of the privilege on his credibility, rather than striking his testimony, was not only consistent with proper concern for defendant’s Sixth Amendment right to call witnesses on his own behalf, it was also fitted to the actual significance of Heller’s action. By the assertion of his privilege to refuse to answer the prosecutor’s questions, Heller’s direct testimony was never subjected to the truth-testing process of cross-examination, and the jury was properly permitted to take this into account. This position is also consistent with other cases holding that a witness’ obstruction of cross-examination is a factor for the jury to weigh on credibility (see, Delaware v Fensterer, 474 US 15, 21-22; Government of Virgin Is. v Riley, 754 F Supp 61, 65 [DVI]).
It follows from the foregoing that the jury had to be made aware that Heller claimed the privilege in response to questions on cross-examination, in order to assess its bearing on his credibility (see, People v Rocco, 170 AD2d 626, lv denied 77 NY2d 1000; United States v Seifert, 648 F2d 557, 560-561 [9th Cir]; 1 McCormick, Evidence § 140, at 526-527 [4th ed]). Thus, the limited interrogation of Heller on cross-examination when he invoked the privilege in the presence of the jury as permitted by the trial court, was proper. People v Thomas (51 NY2d 466) and People v Vargas (86 NY2d 215), relied upon by defendant on this issue, are inapposite. Heller was not called as a prosecution witness and his invocation of the Fifth Amendment privilege was not exploited, directly or indirectly, by the People in order to add substantive weight to the evidence of defendant’s guilt. And the prosecutor in summation could properly refer to Heller’s claim of the privilege in attacking *546 his credibility.* Thus, no errors were committed by the trial court in connection with Gourdin Heller’s assertion of his Fifth Amendment privilege during cross-examination.
We have considered defendant’s remaining assignments of error and find them either unpreserved or without merit.
Accordingly, the order of the Appellate Division should be affirmed.

 Moreover, defendant objected to only one of these references in the prosecutor’s summation and the trial court sustained the objection and ordered the remark stricken.