OPINION OF THE COURT
 

 Bellacosa, J.
 

 A common issue in these four separate cases involves continuing controversies concerning a defendant’s right to personal presence at jury selection sidebar discussions
 
 (see,
 
 CPL 260.20;
 
 People v Antommarchi,
 
 80 NY2d 247,
 
 rearg denied
 
 
 *372
 
 81 NY2d 759). In
 
 People v Vargas, People v Pondexter
 
 and
 
 People v Hutton,
 
 respective waivers of that right are challenged because the trial courts elicited defendants’ choices to waive by stating that certain conditions would otherwise be attached to the examination of prospective jurors. In
 
 People v Wilson,
 
 the Trial Judge engaged in a private conference sought by a frightened potential juror before any examinations began. The discussion was held without the defendant or any attorneys present, but a court reporter transcribed the conference and the Trial Judge sealed the transcript. In
 
 People v Pondexter
 
 and
 
 People v Wilson,
 
 other issues are also raised. We affirm the orders of the Appellate Division affirming the convictions in
 
 People v Vargas, People v Wilson
 
 and
 
 People v Hutton,
 
 the order in
 
 People v Pondexter
 
 should be reversed and a new trial ordered.
 

 I.
 

 People v Vargas
 

 Defendant was convicted after a jury trial of robbery in the first degree. He was tried three weeks after this Court decided
 
 People v Antommarchi
 
 (80 NY2d 247,
 
 supra).
 
 Before the jury selection process began, the Trial Judge expressed reluctance to hold any sidebars at all if the defendant insisted on presence at the Bench with a prospective juror, because that practice in the court’s experience had resulted in "the distinct uneasiness on the part of the juror.” The court stated that "unless the defendant waives his presence personally now, all questions will be put to the jurors in public, and the jurors will answer all questions in public.”
 

 Defense counsel objected, arguing that exposing possibly sensitive questions to prospective jurors in public might "lead to a situation where a juror has personal or very private information that they do not feel comfortable discussing in open court,” and there also might be a "hidden bias” or other prejudice that the jurors would conceal. Nevertheless, given the trial court’s reluctance to hold sidebars at all with defendant present at the Bench with a prospective juror, the defendant waived his right to be present on the record. The subsequent voir dire examination of prospective jurors included several sidebar conferences without defendant’s presence, but with both sides’ lawyers present and participating.
 

 The Appellate Division affirmed defendant’s conviction, and a Judge of this Court granted defendant leave to appeal.
 

 
 *373
 

 People v Pondexter
 

 Defendant’s murder conviction after a jury trial arose out of a botched robbery committed by defendant and an accomplice. After the two stole money at gunpoint from two male victims, defendant shot and killed one of the men when the victim refused to give defendant his house keys. The other victim survived and testified, as did a second eyewitness, Sharon Valdez, who claimed at trial to have seen the entire incident from her window overlooking the street.
 

 During the pretrial voir dire, the Judge asked the defendant if he wished to waive his right to be present at sidebars. The defendant, through counsel, initially indicated that he wanted to be present. The court then stated that "if he’s brought up to the bench there’ll be a number of court officers surrounding him at all times.” Defense counsel suggested that the court instead "send the jury out,” but the Trial Judge replied that "I can’t send 60 people out every time somebody wants to come up to me.” After discussing the case further with his lawyer, defendant signed a written waiver.
 

 The day after Valdez testified and was cross-examined, defense counsel told the court in camera that he had spoken to Valdez ex parte after her testimony. Valdez told defense counsel privately — in sharp contrast to her incriminating testimony against the defendant — that she had been asleep on the night of the incident and did not see anything that occurred. Valdez’s mother, Shirley Hudson, later testified for the defendant that her daughter had been asleep at the time of the criminal incident. On the following day, Valdez appeared in court with a court-appointed attorney. Both her attorney and Valdez indicated that she would assert her Fifth Amendment privilege against self-incrimination in response to any further questions.
 

 The trial court ruled that Valdez had a basis to assert the Fifth Amendment and denied defense counsel’s request to have her assert the privilege under oath in the presence of the jury. Defense counsel then requested that Valdez’s testimony be stricken from the record. The trial court, however, denied the requested relief without comment or further inquiry.
 

 The Appellate Division affirmed defendant’s conviction, and a Judge of this Court granted defendant leave to appeal.
 

 People v Hutton
 

 Defendant’s conviction after a jury trial was for criminal possession of stolen property and unauthorized use of an
 
 *374
 
 automobile. At trial, the court told defendant that he was free to be present at sidebars, "if any take place,” but added that if the defendant insisted on his personal presence, all jurors would remain in the jury box and be questioned in open court. Because of the "constraints of [the] ruling” and because defense counsel felt that "open comments from the jurors [would] kill their ability to speak forthrightly and honestly as to any prejudices,” defendant personally waived his
 
 Antommarchi
 
 rights, stating that he did so of his own free will and that no one forced him to waive that right. The Appellate Division affirmed the conviction, and a Judge of this Court granted defendant leave to appeal.
 

 People v Wilson
 

 This case presents a serious variation of the presence scenarios involving juror examination, in that the precipitating event occurred at an earlier stage than the usual prospective juror examinations. Wilson’s second degree murder conviction arose out of his fatal shooting of a friend in a dispute over a woman, Ronnette Parker, who testified at trial as an eyewitness to the shooting. At trial, before the actual questioning of one particular jury panel had begun, one member of the prospective panel — the only juror at issue here — asked the court staff if he could speak to the Trial Judge privately. He did not want to serve as a juror, but neither did he want to speak out in open court, and certainly not in the presence or hearing of the defendant because of the nature of his concern — fear for his safety. He was taken to the Judge, who spoke with him alone without the presence of any of the lawyers or the defendant. Only a court reporter was present to make a record that was later sealed.
 

 The juror stated that he knew the defendant from his neighborhood and was concerned for his safety if he were even considered for this jury service. He and the defendant were sufficiently acquainted to greet each other and speak on the street, but they did not know each other by name. The prospective juror told the Trial Judge he was afraid that the defendant would be mad at him if he said in open court that he did not want to serve as a juror, especially in light of the small number of minority jurors on the panel. The juror is himself African-American. His specific fear was that the defendant would have had friends from the neighborhood — who the juror knew were not then in jail — beat him up, shoot him or kill him. Finally, when the Trial Judge told the juror that
 
 *375
 
 defendant’s counsel, if he were present, would have an obligation to tell defendant what occurred, the juror objected strenuously to the attorney’s presence or even knowledge of his expressed fears.
 

 The Trial Judge excused the juror. He informed the lawyers only that he had held an in camera examination relating to jury selection requested by a prospective juror and that he had sealed the transcript. Eighteen months after the defendant’s conviction, the Trial Judge told the prosecutor and defense counsel the details of the excusai, and added that the defendant’s extensive criminal history also supported his conclusion that the juror was credible and genuinely concerned for his safety.
 

 The Appellate Division affirmed defendant’s conviction after a jury trial, holding that the defendant’s right to presence was not implicated, because the questioning of the juror occurred before the customary voir dire of the panel was started, and because the entire purpose of the questioning was to keep from defendant the founded fact of this juror’s fear (211 AD2d 136). The Court added that inviting defendant’s counsel, who would have had an obligation to tell defendant, into the in camera conference was not required. A Judge of this Court granted defendant leave to appeal.
 

 II.
 

 On the general and common issue of waiver, we start with the proposition that defendants have a statutory right to be present during sidebar questioning of prospective jurors on matters of bias or prejudice, since such questioning constitutes a "material stage” of the trial
 
 (People v Antommarchi,
 
 80 NY2d 247, 250, supra;
 
 see,
 
 CPL 260.20). Questioning as to such "bias, hostility or predisposition to believe” certain witnesses over others
 
 (People v Sprowal,
 
 84 NY2d 113, 117;
 
 see, People v Sloan,
 
 79 NY2d 386, 392) is to be distinguished from that relating solely to ministerial matters, such as availability for jury service, which does not trigger the right to be present
 
 (People v Velasco,
 
 77 NY2d 469).
 

 Significantly, the right to be present at sidebars is not rooted in the Constitution but rather in CPL 260.20, which requires that "[a] defendant * * * be personally present during the trial of an indictment” (CPL 260.20;
 
 see, People v Sprowal,
 
 84 NY2d 113, 118, supra;
 
 People v Mitchell,
 
 80 NY2d 519). This right may be waived
 
 (People v Mitchell, supra,
 
 at 525) by a vol
 
 *376
 
 untary, knowing and intelligent choice
 
 (see, People v Spotford,
 
 85 NY2d 593). With respect to statutory rights, as contrasted to constitutional rights, this Court has been more flexible regarding the acceptable form of voluntary waivers by defendants and their lawyers
 
 (compare, People v Webb,
 
 78 NY2d 335;
 
 and People v Bello,
 
 82 NY2d 862,
 
 with People v Parker,
 
 57 NY2d 136;
 
 and People v Page,
 
 88 NY2d 1).
 

 The defendants in
 
 People v Vargas, People v Pondexter,
 
 and
 
 People v Hutton
 
 challenge the efficacy of their waivers only insofar as they claim stated conditions announced by the respective trial courts deprive the waivers of their requisite voluntary, knowing and intelligent character as a matter of law
 
 (see, e.g., People v McKenna,
 
 76 NY2d 59, 65). We disagree.
 

 Appellants rely on the claim that "the right to continue the exercise of a privilege granted by the state cannot be made to depend upon the grantee’s submission to a condition prescribed by the state which is hostile to the provisions of the federal [or State] Constitution”
 
 (United States v Chicago, Milwaukee, St. Paul & Pac. R. R. Co.,
 
 282 US 311, 328-329 [citations omitted]). Their common argument and theory, however, contain a threshold flaw: the "rights” they are now claiming are being sacrificed do not exist, as such. To succeed, Vargas and Hutton would have to possess an absolute "right” to have jurors discuss issues of bias and prejudice at sidebar instead of in open court, and Pondexter would have to enjoy a "right” to approach the Bench during voir dire sidebars without escort by court officers. The unassailable fact, however, is that neither the State nor Federal Constitution, nor any statute, nor any decision of this Court or the Supreme Court grants such a set of prerogatives for defendants.
 

 We also reject defendant Pondexter’s claim that the true "right” he was forced to give up if he wished to be present at sidebars was the presumption of innocence. The burden of proof remained on the People throughout the entire trial, and defendant was never put at risk on a cognizable presumption of innocence issue. To the extent that defendant attempts to clothe his right as a "due process right to appear before the jury free of physical restraints” under
 
 Illinois v Allen
 
 (397 US 337,
 
 reh denied
 
 398 US 915), that, too, is unavailing.
 
 Allen
 
 involved a defendant expelled from the courtroom, and contained the following admonition: "no person should be tried while shackled and gagged except as a last resort”
 
 (id.,
 
 at 344). Escort of defendants by court officers to the bench in a courtroom during examination of a juror plainly does not implicate any such due process right.
 

 
 *377
 
 Trial courts must retain appropriate discretion to control their courtrooms and trial proceedings generally and the process of voir dire examination of prospective jurors in particular
 
 (see, People v Jean,
 
 75 NY2d 744, 745 [trial court has discretion to limit examination by counsel on voir dire];
 
 see also, People v Pepper,
 
 59 NY2d 353, 358). This authority necessarily includes the choice whether to employ voir dire sidebars at all
 
 (see, People v Mitchell, supra,
 
 80 NY2d, at 527 [voir dire sidebars are "not constitutionally required”]) or, instead, simply to hold all proceedings in public, open court. Moreover, in these cases, the reasonably based experience of trial courts reveals that jurors are less likely to be truthful about biases at sidebars if they are forced to speak of them in close proximity to the defendant
 
 (see, People v Vargas
 
 instant case record concerning observations to that effect).
 

 Likewise, the trial court’s decision in
 
 People v Pondexter
 
 that it would require court officers to escort and even surround defendant at the Bench, if he chose to exercise his right to presence at such juror explorations, cannot be said in these circumstances to constitute an abuse of discretion as a matter of law. The Trial Judge was faced with a convicted violent felon on trial for murder, attempted murder, armed robbery and criminal possession of a weapon, and the proximity to a civilian prospective juror at the Bench warranted caution and an appropriate security measure for the courtroom
 
 (see, La Rocca v Lane,
 
 37 NY2d 575,
 
 cert denied
 
 424 US 968;
 
 see also, Brown v Doe,
 
 2 F3d 1236, 1247).
 

 Realistically, the choices posed to the defendants in these three waiver cases are not unlike other hard and even more profound choices with which defendants are routinely faced in thousands of cases and circumstances. For example, defendants regularly have to choose whether to plead guilty or have a trial at all, and even whether to surrender appeal rights as part of a negotiated plea. Such arrangements do not suffer a legal impediment of undue coercion as a matter of law. Indeed, guilty pleas and associated waivers are generally accepted as long as appropriate safeguards against impermissible factual coercion are employed
 
 (see, People v Selikoff,
 
 35 NY2d 227, 232-235,
 
 cert denied
 
 419 US 1122;
 
 see also, Bordenkircher v Hayes,
 
 434 US 357, 363-365,
 
 reh denied
 
 435 US 918;
 
 People v Callahan,
 
 80 NY2d 273;
 
 People v Seaberg,
 
 74 NY2d 1). The defendants here made open and informed decisions to voluntarily waive their
 
 Antommarchi
 
 right to presence at jury selection sidebars. While trial courts should be vigilant not to overbear
 
 *378
 
 with activity that might constitute legally coercive or offensive rulings, we discern no such error in these cases and no legal or record basis to set aside the defendants’ voluntary and informed choices.
 

 Also, in defendant Hutton’s case, reversal would in no event be required because defendant’s presence would have had no impact on the excusai of the one juror at issue
 
 (see, People v Feliciano,
 
 88 NY2d 18). This Court held in
 
 Feliciano
 
 that absence from a voir dire sidebar does not require reversal where "the defendant’s presence could not have afforded him or her any meaningful opportunity to affect the outcome”
 
 (id.,
 
 at 26). Only one prospective juror in
 
 Hutton
 
 was actually called to sidebar. She stated that she believed that she recognized the defendant from another criminal trial in which she had been a juror six years earlier. The court excused the juror for cause, and both the prosecution and defense consented to that ex-cusal. Thus, the defendant’s right to presence would have been superfluous and reversal would not be required
 
 (id.,
 
 at 24 [ex-cusal "for cause upon consent” would not have required reversal]).
 

 III.
 

 In
 
 People v Wilson,
 
 defendant also claims that the trial court’s decision to entertain and explore a prospective juror’s fears in private conference violated both his right to be present during material stages of the trial (CPL 260.20;
 
 see, People v Antommarchi,
 
 80 NY2d 247, supra) and his right to have the assistance of counsel at trial
 
 (see, People v Hilliard,
 
 73 NY2d 584, 586). Because this conference took place before any juror examinations even began and before anyone was sworn, however, we agree with the Appellate Division that it did not implicate the
 
 Antommarchi
 
 presence protocols. We need decide no other question or aspect on this point, noting, however, that trial courts possess discretionary power in exceptional or potentially dangerous circumstances, even to close courtrooms at the trial itself.
 

 The prospective juror here, first of all, promptly and at the earliest possible opportunity initiated the contact with the Trial Judge. A phase of the trial before voir dire examination begins, at which the Trial Judge explores the founded and credible fear of an importuning prospective juror, including a fear of openly acknowledging that fear to the defendant or his lawyer, is not, under these circumstances, a stage at which the right to presence should categorically apply
 
 (see,
 
 Preiser,
 
 *379
 
 Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 260.20, at 365). The
 
 People v Antommarchi (supra)
 
 rationale, thus, has no application in this kind of a situation.
 

 Nor did the trial court deny the defendant his right to "single-minded counsel for the accused”
 
 (People v Rosario,
 
 9 NY2d 286, 290,
 
 cert denied
 
 368 US 866), by keeping defense counsel out of the in camera conference
 
 (see, People v Castillo,
 
 80 NY2d 578, 586-587,
 
 cert denied
 
 507 US 1033;
 
 see also, People v Darden,
 
 34 NY2d 177, 181). Here, the trial court properly evaluated the juror’s fear for his safety and found it to be genuine. To include defense counsel, who might single-mindedly conclude that a professional obligation bound him to inform the client of the content of the proceedings, as discussed with the frightened prospective juror, would defeat the whole point of the legitimate in camera request and founded basis for ex-cusal. To have acted otherwise would also be an affront to the juror
 
 (see, People v Kern,
 
 75 NY2d 638, 651-652 [jury service is a civil right guaranteed by statute and the State Constitution],
 
 cert denied
 
 498 US 824) with no cognizable, corresponding advantage to the defendant in these circumstances
 
 (see, People v Castillo, supra,
 
 80 NY2d, at 584).
 

 In a sensitive and potentially dangerous development, the trial court in this case appropriately handled and weighed the founded fears of a prospective juror; no corresponding right of defendant was compromised or prejudiced by the court’s actions
 
 (see, People v Castillo,
 
 80 NY2d 578,
 
 supra).
 

 Finally, the trial court’s
 
 sua sponte
 
 decision to excuse the juror for cause was not an abuse of discretion, as the court properly recognized that the juror’s negative impressions about the defendant would virtually preclude him from being fair. The record supports the affirmance of the Trial Judge’s conclusion that the juror would have had difficulty "rendering an impartial verdict based upon the evidence adduced at the trial” (CPL 270.20 [1] [b];
 
 see, People v Torpey,
 
 63 NY2d 361).
 

 TV.
 

 A.
 

 In
 
 People v Pondexter,
 
 defendant raises an independent claim that requires a reversal and new trial. He argues that the trial testimony of Sharon Valdez should have been stricken because she recanted her testimony in a private conversation with defense counsel shortly after she had finished testifying. Before the alleged recantation, Valdez had been fully examined and
 
 *380
 
 cross-examined. Defendant urges, however, that Valdez’s subsequent intention to assert her Fifth Amendment privilege against self-incrimination, when defendant wanted to re-call her on a subsequent day of the trial as a witness, prevented defense counsel from fully cross-examining the witness (see,
 
 People v Siegel,
 
 87 NY2d 536;
 
 People v Chin,
 
 67 NY2d 22;
 
 see also, Klein v Harris,
 
 667 F2d 274, 289), and thus denied defendant the right to confront witnesses against him (US Const 6th Amend).
 

 Striking a witness’s testimony is "the most drastic relief’ available when a witness refuses further cross-examination under a claim of self-incrimination, and a court should only invoke it when there are no less drastic alternatives
 
 (see, People v Siegel, supra,
 
 at 544). But a trial court has an obligation to weigh the options, and the threshold inquiry and exercise were not undertaken and fulfilled here. When the court is faced with a recantation of the crux of a key witness’s testimony under the circumstances as they evolved in this case, the court must at least explore whether that witness has essentially "refused to testify on questions of matters 'so closely related to the commission of the crime that the entire testimony of the witness should be stricken’ ”
 
 (People v Siegel, supra,
 
 87 NY2d, at 544, quoting
 
 United States v Cardillo,
 
 316 F2d 606, 613 [2d Cir],
 
 cert denied
 
 375 US 822). On this record, the trial court did not satisfy the governing prerequisites
 
 (see, People v Siegel, supra; People v Chin,
 
 67 NY2d 22,
 
 supra; see also, Bagby v Kuhlman,
 
 932 F2d 131, 135,
 
 cert denied sub nom. Bagby v Kuhlmann,
 
 502 US 926;
 
 Klein v Harris,
 
 667 F2d 274, 287-289,
 
 supra).
 
 Because of the centrality of Valdez’s testimony to the People’s case, we therefore reverse the order of the Appellate Division sustaining the conviction and we order a new trial.
 

 B.
 

 In
 
 People v Wilson,
 
 a similar claim is advanced with respect to a prosecution witness, Ronnette Parker, who testified that she saw the defendant shoot the murder victim. Two days after the testimony, defense counsel learned that Parker had previously been the subject of drug possession charges which, at the time of defendant’s trial, had been dismissed. When defendant attempted to re-call Parker to the stand for further cross-examination about these charges, the witness let it be known, on the advice of counsel, that she would assert her Fifth Amendment privilege as to the unrelated drug charges. The trial court denied defense counsel’s request to have Parker’s
 
 *381
 
 entire prior testimony stricken or, in the alternative, to re-call the witness to assert the privilege in the jury’s presence.
 

 In sharp distinction to
 
 People v Pondexter,
 
 the trial court in
 
 People v Wilson
 
 acted within its discretion in refusing to strike Parker’s testimony, because it involved only "collateral matters * * * relating to general credibility”
 
 (People v Siegel, supra,
 
 87 NY2d, at 544). Moreover, even if the witness had not asserted the Fifth Amendment, the court would have acted within its discretion in the first instance in not permitting the witness to be cross-examined about a dismissed charge
 
 (see, People v Rodriguez,
 
 38 NY2d 95, 101) or its underlying facts
 
 (see generally, People v Sorge,
 
 301 NY 198, 201;
 
 La Beau v People,
 
 34 NY 223, 230; Prince, Richardson on Evidence § 6-304, at 381-382 [Farrell 11th ed 1995]). Thus, no basis is presented for any relief concerning the witness’s prior testimony, upon the assertion of the privilege in this respect and at this stage.
 

 V.
 

 Lastly, the defendant in
 
 People v Hutton
 
 claims that the trial court shifted the burden of proof in its instruction to the jury on recent, unexplained and exclusive possession of stolen property
 
 (see, People v Moro,
 
 23 NY2d 496). He argues that the court stated on more than one occasion that "the proof shows that the defendant was found in possession of stolen property in the grand larceny within fifteen to twenty minutes of the commission of such crime.” As defendant never conceded possession of the car — he instead argued at trial that he was never inside the car — he claims that the court’s statements essentially directed the jury to find that he was in the car.
 

 At the time the prosecutor suggested that the court give the jury this particular instruction on recent exclusive possession, defense counsel objected only on the ground that the charge was not appropriate in a stolen car case because of the mobility of the vehicle. At no time did the defendant request any curative or corrective instruction or that the offending language be stricken or removed, except to remark that "there has been a question as to his actual presence in the car.” The claim is therefore not preserved for appellate review (CPL 470.35 [1]; 470.05 [2];
 
 see, People v Gray,
 
 86 NY2d 10, 19).
 

 Accordingly, the respective orders of the Appellate Division in
 
 People v Vargas, People v Wilson
 
 and
 
 People v Hutton
 
 should be affirmed; in
 
 People v Pondexter,
 
 the order of the Appellate Division should be reversed and a new trial ordered.
 

 
 *382
 
 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
 

 In
 
 People v Vargas, People v Wilson
 
 and
 
 People v Hutton:
 
 Order affirmed.
 

 In
 
 People v Pondexter:
 
 Order reversed, etc.