THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER VISICH, Appellant. [870 NYS2d 376]—

The defendant was convicted of murder in the first degree and other crimes based on evidence that he hired Frank Thon to murder his wife. The defendant contacted Thon through Eddie Cassatt. Thon testified at trial pursuant to a cooperation agreement and admitted to the murder. Cassatt admitted that he put the defendant in contact with Thon, but denied knowing about or being involved in the murder. Rather, Cassatt testified, he knew Thon from the semi-pro car racing circuit, and put the defendant in contact with Thon for a matter related to car racing. During cross-examination, the defendant attempted to question both witnesses concerning whether they had been involved, either separately or together, in prior crimes, including beatings and murders, for which they had not been charged or convicted. However, both Thon and Cassatt refused to answer such questions, each invoking their privilege against self-incrimination. The trial court denied the defendant's request to strike the direct testimony of Thon and Cassatt based on such refusals. However, the court charged the jury that the witnesses' invocation of the privilege could be considered in determining credibility. On appeal, the defendant argues that the trial court's refusal to strike the direct testimony of Thon and Cassatt deprived him of his Sixth Amendment right to confront witnesses against him. The defendant argues that he was unable to discredit the witnesses' direct testimony, and to demonstrate the biased and self-interested nature of their testimony, including that they falsely implicated the defendant to protect their own penal interests.

A defendant in a criminal case has a constitutional right to confront witnesses against him through cross-examination (*see People v Chin,* 67 NY2d 22, 27-28 [1986]). However, the inquiry is not open-ended and a witness may, if appropriate, invoke the constitutional shield against self-incrimination (*see People v Chin,* 67 NY2d 22, 28 [1986]). Refusal to answer the cross-examiner's questions may so distort the fact-finding process that some or all of the direct testimony must be stricken, lest the defendant be deprived of a fair trial (*see People v Chin,* 67 NY2d at 28). In each case, "the ultimate question must be whether the defendant's inability to test the accuracy of the witness's direct examination has been such as to create a substantial risk of prejudice" (*id.,* quoting McCormick, Evidence § 140, at 347 [3d ed]). This depends, at least in part, on the defendant's ability to make the same impeachment argument in the absence of excluded evidence (*see People v Chin,* 67 NY2d at 28). A trial court has wide discretion in fashioning the

appropriate corrective response when a witness invokes the privilege against self-incrimination, depending on the degree of prejudice that was incurred by the party whose right of cross-examination was impaired by the invocation of the privilege (*see People v Siegel,* 87 NY2d 536 [1995]; *People v Chin,* 67 NY2d 22, 29 [1986]). Here, in addition to the fact that the defendant was able to cross-examine Thon and Cassatt concerning the crimes at bar, and to argue on summation the inferences to be drawn from their invocation of the privilege against self-incrimination, the defendant was able to explore each witness's bias and motivation to testify falsely through other evidence. Consequently, it cannot be said that the defendant's ability to test the accuracy of direct testimony of Thon and Cassatt was impaired such as to create a substantial risk of prejudice, or that the corrective response fashioned by the trial court was an improvident exercise of its discretion (*see People v Siegel,* 87 NY2d at 544; *People v Chin,* 67 NY2d at 28-29).

Further, the trial court did not err in denying that branch of the defendant's omnibus motion which was to suppress evidence found in his vehicle. The credibility determinations of a hearing court are accorded great deference on appeal and will not be disturbed unless clearly unsupported by the record (*see People v Wynter,* 48 AD3d 492 [2008]). Here, the record supports the hearing court's determination to credit the testimony of the police witnesses, which established that the defendant voluntarily consented to the search (*see People v Gonzalez,* 39 NY2d 122 [1976]; *People v Wynter,* 48 AD3d 492 [2008]). Further, on the facts presented, the duration of the search did not exceed the scope of the consent, and there is no evidence that the consent was withdrawn or otherwise terminated during the search (*see generally People v Calvo,* 1 AD3d 605 [2003]; *People v Borg,* 110 AD2d 844 [1985]; *People v Hopkins,* 86 AD2d 937 [1982]; *People v Russell,* 73 AD2d 791 [1979]).

Finally, the trial court properly instructed the jury that the issue of whether Cassatt was an accomplice was a question of fact, in that competing inferences regarding his complicity could reasonably have been drawn from the evidence adduced at the trial (*see People v Besser,* 96 NY2d 136, 147 [2001]; *People v Cobos,* 57 NY2d 798 [1982]; *People v Argentina,* 27 AD3d 569, 570 [2006]). Further, assuming arguendo that the jury found Cassatt to be an accomplice, the testimony of both Cassatt and Thon (who was found to be an accomplice as a matter of law) was corroborated by independent evidence connecting the defendant to the crimes (*see* CPL 60.22 [1]; *People v Caban,* 5 NY3d 143 [2005]; *People v Breland,* 83 NY2d 286 [1994]).

The defendant's remaining contentions are without merit. Ritter, J.P., Florio, Miller and Dillon, JJ., concur.