[991 NYS2d 418]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NEAL McLEOD, Appellant.

First Department, August 21, 2014

## APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Claudia S. Trupp* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Beth Fisch Cohen* and *Eleanor J. Ostrow* of counsel), for respondent.

## OPINION OF THE COURT

ACOSTA, J.

The primary issue on appeal is whether defendant's constitutional right of confrontation was violated when the trial court curtailed defense counsel's cross-examination of a key prosecution witness—defendant's alleged accomplice—who entered into a cooperation agreement with the People, admitted

to committing and implicated defendant in prior robberies, and intended to invoke his privilege against self-incrimination in response to questions about those crimes. We find that the trial court improvidently exercised its discretion by precluding the proposed line of questioning concerning the witness's prior crimes—thereby allowing the witness to avoid asserting his Fifth Amendment privilege in the jury's presence—because the probative value of the questions, targeted at the witness's credibility, bias, and motive to fabricate testimony, was not outweighed by any purported prejudice against the People. At bottom, defendant's fundamental right of confrontation requires that he be permitted to adequately probe the bias of the People's witness, and he was unduly restricted from doing so.

Defendant was charged with several crimes relating to an incident on June 20, 2009 in which he and four codefendants allegedly robbed an off-duty police officer in Manhattan. One of the codefendants (to whom we will refer as "M.") entered into a cooperation agreement with the prosecution and testified at trial that defendant participated in planning the robbery and was to serve as the getaway driver. Contradicting M.'s testimony, defendant testified that he was only driving his friends around town to "meet girls" and was unaware that M. or anyone else was going to commit a robbery. At some point in the evening, defendant testified, he parked and let M. and two other friends out of the car to talk to girls, when M. unexpectedly robbed the victim.

The accomplice witness, M., admitted to ripping a gold chain from the victim's neck and then running away. The victim, off-duty police officer Erickson Peralta, was unable to catch M. and instead approached another codefendant, D. (ultimately adjudicated a youthful offender), and held him at gunpoint. Defendant testified that he had remained in the car with another codefendant and was sending text messages to his girlfriend. A commotion caught his attention. When he looked up, he saw from his car that his friend D. was being held at gunpoint, so he removed a crowbar from the trunk of his car and used it in an attempt to disarm Peralta.

As a key prosecution witness, M.'s trial testimony was the only evidence that suggested defendant's intent to participate in the Manhattan robbery. Defense counsel sought to question M. on prior uncharged Bronx robberies to which he admitted during his cooperation proffer, but M.'s attorney indicated his client's intention to invoke his Fifth Amendment privilege

against self-incrimination.* Defense counsel also intended to question M. about the circumstances underlying his guilty plea and youthful offender adjudication for another robbery in the Bronx, the disposition of which was pending when he committed the instant robbery.

The trial court curtailed defense counsel's proposed line of questioning, reasoning that the issues were collateral and that the jury would be misled—and the People prejudiced—if M. asserted the Fifth Amendment in the jury's presence because the jury would not learn that M. had also implicated defendant in some of the uncharged crimes.

The jury found defendant guilty of robbery in the first degree, two counts of robbery in the second degree, attempted assault in the first degree, and assault in the second degree. Defendant was sentenced to an aggregate term of five years' imprisonment and now appeals.

A defendant's confrontation right is guaranteed by the New York and US constitutions (NY Const, art I, § 6; US Const 6th Amend), and its elemental function is to ensure a defendant's opportunity to cross-examine witnesses against him or her (see Delaware v Van Arsdall, 475 US 673, 678-679 [1986]; People v Hudy, 73 NY2d 40, 56-57 [1988]). Although trial courts are accorded discretion in deciding which evidence to admit based on considerations such as prejudice or confusion of issues (People v Corby, 6 NY3d 231, 234-235 [2005]; see also Van Arsdall, 475 US at 679), their discretion is nonetheless "circumscribed by the defendant's constitutional rights to present a defense and confront his accusers" (Hudy, 73 NY2d at 57). Indeed, a trial court's discretion should be narrowly construed when a defendant's fundamental rights are at issue (see People v Foy, 32 NY2d 473, 476-477 [1973]), and the confrontation right is perhaps as fundamental as any other.

Here, defendant sought to avail himself of this right by questioning M. in an attempt to cast doubt on his credibility by revealing his bias and motive to fabricate testimony. Defense counsel's theory was that M. had implicated defendant in the prior uncharged robberies in order to bolster the value of his

---

* In his cooperation agreement with the New York County District Attorney's Office, M. admitted to committing uncharged robberies in Bronx County. The New York County D.A.'s Office told the trial court it was unable to grant immunity for those crimes, and the trial court declined to grant an adjournment to allow defense counsel to contact the Bronx County D.A. to seek a grant of immunity.

cooperation agreement with the People. This was unquestionably an appropriate trial strategy, since "exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination" (*Van Arsdall*, 475 US at 678-679). That M. intended to invoke his Fifth Amendment privilege and refuse to answer the questions does not abrogate defendant's Sixth Amendment right of confrontation.

As an accomplice witness, M.'s credibility, bias, and motive to fabricate were not collateral issues (*see Hudy*, 73 NY2d at 56-57; *People v Chin*, 67 NY2d 22, 28 [1986] ["If the cross-examiner seeks to explore more than mere general credibility, as, for example, to establish bias or interest, the subject of inquiry is not collateral"]; *People v Ashner*, 190 AD2d 238, 248 [2d Dept 1993]). Therefore, defense counsel should have been permitted to question him on the prior crimes. If he subsequently invoked his Fifth Amendment privilege, the trial court should have gone as far as striking all or some of his direct testimony (*see People v Siegel*, 87 NY2d 536, 544 [1995]). At a minimum, the court should have pursued the "least drastic relief" (typically reserved for "collateral matters or cumulative testimony concerning credibility") by instructing the jury that it could consider M.'s invocation of the Fifth Amendment in determining his credibility (*see id.*; *People v Jimenez*, 287 AD2d 297 [1st Dept 2001], *lv denied* 97 NY2d 683 [2001]).

Contrary to the People's argument, defense counsel did not seek to "parade [the] witness before the jury for the sole purpose of eliciting in open court the witness' refusal to testify" (*People v Thomas*, 51 NY2d 466, 473 [1980]). The People, not defendant, called the witness (*see Siegel*, 87 NY2d at 545), and defense counsel sought to do more than simply have him invoke his privilege before the jury. Moreover, M.'s bias was not "fully explored through other means," nor did the precluded line of questioning "involve[ ] cumulative matter already presented" (*see Corby*, 6 NY3d at 235-236 [internal quotation marks omitted]). Although the jury learned of the cooperation agreement generally, it did not learn that M. admitted to committing other robberies. Defense counsel sought to demonstrate M.'s general untrustworthiness as well as his motive to fabricate in order to augment the value of his cooperation with the People. Because the trial court foreclosed defendant's proposed line of questioning, defendant was unable "to make the same impeachment argument in the absence of excluded evidence" (*Chin*, 67 NY2d at 29 [internal quotation marks omitted]).

In sum, defense counsel's proposed line of questioning would have been probative of the witness's bias and credibility, and the court's preclusion of the line of questioning violated defendant's confrontation right. Allowing the questions would not have been unduly prejudicial to the People, even if the jury would not have learned that M. implicated defendant in the uncharged crimes. This is particularly so in light of defense counsel's indication that he would have made the strategic decision to proceed with the line of questioning, given the possibility that M. would not invoke the Fifth Amendment and would instead answer the questions, to show that he fabricated defendant's involvement in the other crimes to obtain a more favorable cooperation agreement. In any event, one of those crimes did not involve defendant, according to M.'s admissions during his cooperation proffer.

■ Lastly, the error was not harmless beyond a reasonable doubt because there is a "reasonable possibility that the error might have contributed to defendant's conviction" (*People v Crimmins*, 36 NY2d 230, 237 [1975]). The trial court's limitation of defense counsel's line of questioning precluded defendant from adequately impeaching the accomplice witness's credibility and revealing his bias and motive to fabricate testimony. This was an error that may have reasonably contributed to defendant's conviction, because the jury might have deemed M. incredible if they had learned about his prior robberies or heard his invocation of the Fifth Amendment. Indeed, M.'s testimony, and thus his credibility, were central in proving defendant's mens rea; improperly curtailing defendant's impeachment of M. may very well have contributed to his conviction.

Because of our reversal based on the foregoing discussion, we need not reach defendant's remaining arguments, except that we find that the verdict was based on legally sufficient evidence and was not against the weight of the evidence.

Accordingly, the judgment of the Supreme Court, New York County (Maxwell Wiley, J.), rendered January 26, 2012, convicting defendant, after a jury trial, of robbery in the first degree, robbery in the second degree (two counts), attempted assault in the first degree, and assault in the second degree, and sentencing him to an aggregate term of five years, should be reversed, on the law, and the matter remanded for a new trial.

GONZALEZ, P.J., SAXE, RICHTER and MANZANET-DANIELS, JJ., concur.

Judgment, Supreme Court, New York County, rendered January 26, 2012, reversed, on the law, and the matter remanded for a new trial.