(August 15, 2017)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NAKAE THOMPSON, Appellant. [59 NYS3d 378]—

Judgment, Supreme Court, New York County (Michael Sonberg, J.), rendered September 4, 2013, as amended September 18, 2013, convicting defendant, after a jury trial, of murder in the second degree, gang assault in the first degree and criminal possession of a weapon in the second degree (two counts), and sentencing him, as a second violent felony offender, to an aggregate term of 30 years to life, unanimously affirmed.

The verdict was based on legally sufficient evidence, and was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]). The element of homicidal intent could be inferred from defendant's act of aiming at the victim and firing a shot at very close range, striking him in the vicinity of the neck (see e.g. People v Steele, 93 AD3d 492 [1st Dept 2012], lv denied 19 NY3d 968 [2012]; People v Mason, 254 AD2d 109 [1st Dept 1998], lv denied 92 NY2d 1035 [1998]). Furthermore, the circumstances support an inference that the killing was a deliberate effort by defendant, with the assistance of one or more other persons. Neither the surveillance videotape, nor any other evidence, supports defendant's assertion that the shooting may have been reckless or negligent.

The court properly exercised its discretion in denying defendant's request to strike the testimony of an eyewitness who invoked his Fifth Amendment privilege, and was denied immunity, as to certain matters. Defendant received a full opportunity to cross-examine the witness about all matters related to the homicide he observed. Although the witness, on advice of counsel, declined to answer questions about his cooperation agreement, which pertained to unrelated criminal charges, there was no prejudice to defendant because the terms of the agreement, the underlying facts of the pending charges and the witness's expectation of a benefit for his testimony

were revealed to the jury in detail, by way of a stipulation. Thus, the jury was fully able to evaluate the effect of the expected benefit. By way of contrast, questions regarding the witness's pending charges and his other criminal or possibly criminal activity were collateral matters that only went to his general credibility. Moreover, the court instructed the jury that it could consider the witness's refusal to answer such questions in evaluating the believability and weight of his testimony (*see People v Siegel*, 87 NY2d 536, 544 [1995]). "Striking a witness's testimony is the most drastic relief available when a witness refuses further cross-examination under a claim of self-incrimination, and a court should only invoke it when there are no less drastic alternatives" (*People v Vargas*, 88 NY2d 363, 380 [1996] [internal quotation marks omitted]).

The court lawfully imposed a consecutive sentence for the conviction under Penal Law § 265.03 (3), because there was a completed possession, within the meaning of that statute, before the shooting occurred (*see People v Brown*, 21 NY3d 739 [2013]).

Defendant's claim that his sentence was based on a presentence report that lacked required information is unpreserved and expressly waived (*see People v Davis*, 145 AD3d 623 [1st Dept 2016], *lv denied* 28 NY3d 1183 [2017]), and we decline to review his claim in the interest of justice. As an alternative holding, we find no basis upon which to remand for resentencing. When the court inquired whether defendant was "prepared to be sentenced" without having been interviewed by the Probation Department, defendant and his counsel each responded affirmatively. Had defendant "wished to be interviewed by the Probation Department," he could have so informed the court (*see People v Pinkston*, 138 AD3d 431, 432 [1st Dept 2016], *lv denied* 27 NY3d 1137 [2016]). Concur—Sweeny, J.P., Renwick, Andrias and Gesmer, JJ.