[999 NE2d 1168, 977 NYS2d 723]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS BROWN, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH HARRIS, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARNELL CARTER, Appellant.

Argued October 16, 2013; decided November 14, 2013

**POINTS OF COUNSEL**

*The Legal Aid Society*, Bronx (*Lily Goetz* of counsel), and *Richard M. Greenberg, Office of the Appellate Defender*, New York City (*Risa Gerson* of counsel), for appellant in the first above-entitled action. I. The prosecutor deprived Thomas Brown of a fair trial when, in summation, he shifted and diluted the burden of proof by arguing that the jury must choose between two views of the evidence. (*People v Mirenda*, 23 NY2d 439; *Berger v United States*, 295 US 78; *People v Zimmer*, 51 NY2d 390; *People v Whalen*, 59 NY2d 273; *In re Winship*, 397 US 358; *People v Johnson*, 11 AD3d 224; *United States v Khan*, 821 F2d 90; *People v Crimmins*, 36 NY2d 230; *People v Alexander*, 94 NY2d 382; *People v Levandowski*, 8 AD3d 898.) II. Thomas Brown's consecutive sentences for murder and weapon possession are illegal since no evidence established that the perpetrator possessed a loaded weapon at any time other than during the shooting of Jarvis Bradford. (*People v Hamilton*, 4 NY3d 654; *People v Wright*, 19 NY3d 359; *People v Rosas*, 8 NY3d 493; *People v Salcedo*, 92 NY2d 1019; *People v Laureano*, 87 NY2d

640; *People v Brown*, 80 NY2d 361; *Matter of Johnson v Morgenthau*, 69 NY2d 148; *People v Dean*, 8 NY3d 929; *People v Ramirez*, 89 NY2d 444; *People v Tineo*, 94 AD3d 507.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Martin J. Foncello, Susan Axelrod* and *Christopher P. Marinelli* of counsel), for respondent in the first above-entitled action. I. Defendant's sentence was lawful. (*People v Day*, 73 NY2d 208; *People v Snyder*, 241 NY 81; *People v Wright*, 19 NY3d 359; *Blockburger v United States*, 284 US 299; *People v Taveras*, 12 NY3d 21; *People v Laureano*, 87 NY2d 640; *People v McKnight*, 16 NY3d 43; *People v Ramirez*, 89 NY2d 444; *People v Frazier*, 16 NY3d 36; *People v Arroyo*, 93 NY2d 990.) II. The prosecutor's comments in summation did not constitute burden shifting. (*People v Heide*, 84 NY2d 943; *People v Dawson*, 50 NY2d 311; *People v Utley*, 45 NY2d 908; *People v Tonge*, 93 NY2d 838; *People v Dien*, 77 NY2d 885; *People v Monroe*, 90 NY2d 982; *People v Weston*, 56 NY2d 844; *People v Contes*, 60 NY2d 620; *People v Santiago*, 52 NY2d 865; *People v Tevaha*, 204 AD2d 92, 84 NY2d 879.)

*Richard M. Greenberg, Office of the Appellate Defender*, New York City (*Thomas M. Nosewicz* of counsel), for appellant in the second above-entitled action. I. The firearm taken from the Queens apartment that Joseph Harris had been invited into should have been suppressed because the police had no reason to enter the apartment and upend a couch after Mr. Harris had been removed from the apartment. (*Minnesota v Carter*, 525 US 83; *People v Ramirez-Portoreal*, 88 NY2d 99; *People v Ortiz*, 83 NY2d 840; *United States v Poe*, 556 F3d 1113; *People v Perez*, 37 Misc 3d 734; *Payton v New York*, 445 US 573; *Maryland v Buie*, 494 US 325; *People v Kelly*, 62 NY2d 516; *California v Trombetta*, 467 US 479.) II. Joseph Harris's consecutive sentences for simple possession and use of a weapon are illegal because all the offenses occurred at the same time and place and involved the same firearm and a single victim. (*People v Longshore*, 86 NY2d 851; *People v Frazier*, 16 NY3d 36; *People v Taveras*, 12 NY3d 21; *People v Brown*, 80 NY2d 361; *People v McCray*, 102 AD3d 560; *People v McKnight*, 16 NY3d 43; *People v Battles*, 16 NY3d 54; *People v Salcedo*, 92 NY2d 1019; *People v Wright*, 19 NY3d 359; *People v Hamilton*, 4 NY3d 654.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Ellen Stanfield Friedman* and *Christopher P. Marinelli* of counsel), for respondent in the second above-entitled action. I. Defendant's

consecutive sentences are legal. (*Blockburger v United States*, 284 US 299; *People v Day*, 73 NY2d 208; *People v Laureano*, 87 NY2d 640; *People v McKnight*, 16 NY3d 43; *People v Taveras*, 12 NY3d 21; *People v Wright*, 19 NY3d 359; *People v Ramirez*, 89 NY2d 444; *People v Snyder*, 241 NY 81; *People v Frazier*, 16 NY3d 36; *People v Arroyo*, 93 NY2d 990.) II. The hearing court properly denied defendant's motion to suppress the gun recovered from Ricky Kelly's apartment. (*People v Albro*, 52 NY2d 619; *People v Francois*, 14 NY3d 732; *People v Wheeler*, 2 NY3d 370; *People v Sierra*, 83 NY2d 928; *People v Bradford*, 15 NY3d 329; *People v Paulman*, 5 NY3d 122; *People v Wilkerson*, 64 NY2d 749; *People v Giles*, 73 NY2d 666; *People v Borges*, 69 NY2d 1031; *People v Jose*, 94 NY2d 844.)

*David J. Farrugia, Public Defender*, Lockport (*Mary-Jean Bowman* of counsel), for appellant in the third above-entitled action. Darnell Carter's consecutive sentences for possession of a weapon and murder in the second degree are illegal because the offenses were simultaneous and part of the same transaction. (*People v Fuentes*, 52 AD3d 1297; *People v Ramirez*, 89 NY2d 444; *People v Laureano*, 87 NY2d 640; *People v Brown*, 80 NY2d 361; *People v Taveras*, 12 NY3d 21; *People v Hamilton*, 4 NY3d 654.)

*Michael J. Violante, District Attorney*, Lockport (*Thomas H. Brandt* of counsel), for respondent in the third above-entitled action. Defendant's consecutive sentences were legal. (*People v Laureano*, 87 NY2d 640; *People v Wright*, 19 NY3d 359; *People v Hamilton*, 4 NY3d 654; *People v Sturkey*, 77 NY2d 979; *People v Almodovar*, 62 NY2d 126; *People v Saunders*, 85 NY2d 339; *People v Salcedo*, 92 NY2d 1019.)

**OPINION OF THE COURT**

READ, J.

We are asked in these appeals to decide whether a sentence imposed for "simple" knowing, unlawful possession of a loaded weapon (i.e., without any intent to use) was properly run consecutively to the sentence for another crime committed with the same weapon. We conclude that these three defendants completed the crime of possession independently of their commission of the later crimes, and therefore consecutive sentencing was permissible.

I

Statutory Background

Penal Law § 70.25 (2) provides as follows:

"When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences . . . must run concurrently."

Before 2006, Penal Law § 265.03, second-degree criminal possession of a weapon, provided that

"[a] person is guilty of criminal possession of a weapon in the second degree when, *with intent to use the same unlawfully against another*: (1) he possesses a machine-gun; or (2) he possesses a loaded firearm; or (3) he possesses a disguised gun" (former Penal Law § 265.03 [emphasis added]).

The Legislature amended the statute in 2006 to include, in addition to specific-intent possession, a so-called "simple" possession provision. Specifically, the statute now reads as follows:

"A person is guilty of criminal possession of a weapon in the second degree when: (1) with intent to use the same unlawfully against another, such person: (a) possesses a machine-gun; or (b) possesses a loaded firearm; or (c) possesses a disguised gun; or (2) such person possesses five or more firearms; or (3) *such person possesses any loaded firearm*" (Penal Law § 265.03 [emphasis added]; *see also* L 2006, ch 742).

Further, before 2006 the unlawful possession of a loaded firearm outside one's home or business was third-degree criminal possession of a weapon. The Legislature elevated this type of possession to a second-degree crime when it amended the Penal Law in 2006.

## II

### Brown

Around 4:00 a.m. on June 19, 2005, Jarvis Bradford and friends were leaving the Cherry Lounge at 128th Street and Amsterdam Avenue in Manhattan. Bradford and defendant Thomas Brown, who had also been at the club, began arguing. A witness later testified that Brown and Bradford gestured to their waistbands and "make like they had something with them right there at the scene." Brown walked away and got into the

back seat of his van; he also gave the van's keys to his brother-in-law, Giovanni Alvarado, and instructed Alvarado to wait for Bradford to leave and then to follow. Brown told Alvarado he was going to shoot Bradford. Alvarado did as requested, following Bradford and friends to a nearby McDonald's.

Bradford left his car and went to the walk-up window to order food. Brown left his van, walked up to Bradford and shot him four times from less than 10 feet away, killing him. Brown ran back to the van, and Alvarado later testified that he had "something that appeared to be a gun" in his left hand as he returned to the van, but Alvarado also testified he "didn't see exactly." Alvarado and defendant drove away.

Several days later, Brown and Alvarado traveled to Atlanta, where they remained for several months. Alvarado returned to New York in November 2005 and was arrested for Bradford's murder. He entered into a cooperation agreement with the People. On May 12, 2006, Brown was arrested in Baltimore for possession of four firearms. He was subsequently extradited to New York, where he was arraigned in New York County on June 26, 2006, for crimes related to the killing of Bradford.

Brown was subsequently convicted after a jury trial of second-degree intentional murder (Penal Law § 125.25 [1]), and third-degree criminal possession of a weapon (former Penal Law § 265.02 [4]).[1] Supreme Court sentenced Brown to consecutive prison terms of 25 years to life for the murder, and three years for the weapon possession.

On appeal, Brown argued that the trial court erred in imposing consecutive sentences. In December 2011, the Appellate Division unanimously affirmed the judgment of conviction and sentence (90 AD3d 575 [1st Dept 2011]). The court concluded that consecutive sentences were properly imposed under Penal Law § 70.25 (2) because the murder and weapon possession were separate acts for sentencing purposes (id. at 576). On June 21, 2012, a Judge of this Court granted defendant leave to appeal (19 NY3d 958 [2012]), and we now affirm.

## Harris

On September 25, 2008, Leonard Lewis was driving near West 112th Street and Lenox Avenue in Manhattan. He stopped to

---

1. As already noted, before 2006 possession of a loaded gun outside the home or place of business was only third-degree weapon possession.

talk with a friend, "Alley Mo," and saw several other individuals whom he knew standing nearby, including defendant Joseph Harris. Twenty minutes later, Harris approached Lewis's car, and said, "What's up? You all right?" He shook Lewis's hand and then shot him five or six times. Harris ran across the street into a housing project. Lewis flagged down a police car and described the incident. Several days later, Lewis picked out Harris as the shooter from a photo array.

On November 3, 2008, Harris was indicted for crimes in connection with the shooting of Lewis. He was later convicted after a jury trial of second-degree attempted murder (Penal Law §§ 110.00, 125.25 [1]), first-degree assault (Penal Law § 120.10 [1]) and two counts of second-degree criminal possession of a weapon (Penal Law § 265.03 [1] [b]; [3] [possession with intent to use unlawfully against another; possession outside one's home or place of business]).[2] Supreme Court sentenced Harris as a persistent violent felony offender to 45 years to life in prison: 25 years to life for the attempted murder and assault, and 20 years to life for weapon possession with intent to use unlawfully, to run concurrently with each other; and 20 years to life for the weapon possession outside the home or business, to run consecutively to the sentences for attempted murder and assault.

On appeal, Harris argued that the trial court erred in imposing consecutive sentences for the criminal possession of a weapon and the attempted murder and assault. In June 2012, the Appellate Division affirmed (96 AD3d 502 [1st Dept 2012]). The Court remarked that the weapon possession crime

> "has no intent [to use] element; accordingly, the issue of whether consecutive sentences require separate unlawful intents is not implicated here. The evidence clearly established that [Harris] was carrying the weapon at the time he encountered and shot [Lewis]. Accordingly, the act of possession was complete before the shooting, and consecutive sentences were authorized by Penal Law § 70.25 (2)" (*id.* at 503 [citations omitted]).

On September 28, 2012, a Judge of this Court granted defendant leave to appeal (19 NY3d 1026 [2012]), and we now affirm.

---

**2.** Harris's crime was post-2006, so he was prosecuted under the enhanced second-degree criminal possession statute.

*Carter*

On the evening of March 20, 2009, defendant Darnell Carter was partying with friends at an apartment owned by Robert Briggs in Niagara Falls, New York. That same evening, Briggs went on a date with a woman named Sicory Walker. The two left the apartment and walked to Briggs's car, which was parked in a parking lot shared with a convenience store. As they were getting into the car, Walker saw several "kids" creeping in a line against the wall of the store. The first in line had something covering his face, and he pointed a gun at Briggs. Briggs ran around the corner. Walker heard several pops and saw the kids run after Briggs.

A few moments earlier, Shenkayla Hollifield had seen Carter in the convenience store and had talked to him. Hollifield left the store with two female companions and saw Carter and two other men run along the side of the building in a line, crouching and running between the building and the cars. Hollifield saw a silver handgun in Carter's hand, and then as she started to run, heard three shots. The three women jumped in a car and drove away, and as they did, Hollifield saw Carter and the two other men running across the street.

Carter gave a statement to the police that "they gave [the gun] to me just before we went in the store, they wanted me to hold it." He told police that "he had the gun tucked in the waistband of his pants and . . . somebody took the gun . . . out of his waistband, and that they had fired the gun." Carter further told the police that "he didn't go there to rob the guy, but they were going to rob him, and they were going to take everything that he had," and that he went along "because he thought that they needed him if there was going to be a fight."

Carter was tried by jury for crimes related to the killing of Briggs; he was convicted of two counts of second-degree murder (Penal Law § 125.25 [1] [intentional murder], [3] [felony-murder]), two counts of first-degree robbery (Penal Law § 160.15), second-degree criminal possession of a weapon (Penal Law § 265.03) and first-degree criminal use of a firearm (Penal Law § 265.09). County Court sentenced him to a prison term of 25 years to life on each second-degree murder conviction, to run concurrently to each other; 25 years on each first-degree robbery conviction, to run concurrently to each other and all other sentences; 25 years on the first-degree criminal use of a firearm,

to run concurrently to all sentences; and 15 years on the second-degree criminal possession of a weapon conviction, to run consecutively to the second-degree murder sentences and concurrently to all other sentences.

On June 15, 2012, the Appellate Division declared Carter's sentence illegal insofar as County Court directed the sentence imposed for second-degree weapon possession to run consecutively to the concurrent sentences imposed for the two counts of second-degree murder, modified the judgment accordingly and otherwise affirmed (96 AD3d 1520 [4th Dept 2012]). Noting that Penal Law § 70.25 (2) requires concurrent sentences for "two or more offenses committed through a single act or omission," the Court concluded that "[h]ere, there was no evidence of intended use of the weapon against another apart from its use in the killing of the murder victim" (*id.* at 1522 [brackets and internal quotation marks omitted]). The People moved for reargument; they also sought leave to appeal to us, which a Judge of this Court granted on October 4, 2012 (19 NY3d 1101 [2012]).

On September 28, 2012, the Appellate Division withdrew its previous decision (98 AD3d 1329 [4th Dept 2012]); on November 9, 2012, the Court granted the motion to reargue and amended the memorandum and order to delete the direction for resentencing (100 AD3d 1472 [4th Dept 2012]). The appeal to us was withdrawn by stipulation (20 NY3d 1059 [2013]). Carter then sought leave to appeal from the Appellate Division's amended memorandum and order, which a Judge of this Court granted on February 22, 2013 (20 NY3d 1060 [2013]). We now affirm.

## III

These three appeals present the same issue: whether the defendants' "simple" knowing, unlawful possession of a loaded weapon (as opposed to possession with intent to use) was separate from the subsequent use of that weapon to commit a crime. Brown was convicted of third-degree possession before the 2006 amendments, while Harris and Carter were convicted of second-degree possession under the post-2006 version of the law, thus qualifying for the enhanced penalty. All defendants argue that their sentences for possession should run concurrently because there is no evidence they possessed loaded weapons before or after using them against their respective victims, and thus possession was subsumed within use. The People counter that either direct or circumstantial evidence proves that these defendants committed a completed act of possession.

As noted earlier, Penal Law § 70.25 (2), which governs consecutive sentencing, prohibits consecutive sentences where either "a single act [or omission] constitutes two offenses," or "a single act [or omission] constitutes one of the offenses and a material element of another" (*see People v Laureano*, 87 NY2d 640, 643 [1996]). In *People v Wright* (19 NY3d 359, 365 [2012]), which addressed "intent to use" weapon possession, we concluded that consecutive sentences may be imposed "[o]nly where the act of possession is accomplished before the commission of the ensuing crime and with a mental state that both satisfies the statutory mens rea element and is discrete from that of the underlying crime." The specific issue in *Wright* was whether "intent to use" second-degree possession was separate from the use of the weapon in a first-degree murder. We concluded that the possession was only complete when the defendant formed the mens rea necessary for committing the two murders for which he was convicted. Thus consecutive sentences were prohibited.

By contrast, in the earlier case of *People v Salcedo* (92 NY2d 1019, 1021 [1998]), we determined that continuous possession of the weapon was not determinative. There, the defendant had chased his ex-girlfriend down the street with a gun, repeatedly demanding that she go with him. Finally, after she refused again and again to do so, Salcedo shot her dead (*id*. at 1022). We concluded that the possession was complete because Salcedo had specific intent to use the gun to compel the victim to leave, and only after she resisted did he form the intent to murder her. The *Wright* court explained that completion is measured by the "point at which" a defendant's "relevant intent changes" (*Wright*, 19 NY3d at 366).

As compared with "intent to use" cases, the inquiry in "simple" possession cases necessarily focuses on the separateness of acts. The actus reus in these two murders (Brown and Carter) and one attempted murder (Harris) is the firing of the shots that killed or were intended to kill the victims. To fire the shot, of course, the shooter *must* possess the gun; thus possession is an element of the actus reus required to be proved in each murder or attempted murder. And the actus reus for "simple" possession is possession alone.

■ The mens rea for any crime " 'can be formed, and need only exist, *at the very moment* the person engages in prohibited conduct or acts to cause the prohibited result, and not at any earlier time' " (*People v Muhammad*, 17 NY3d 532, 543 [2011]

[emphasis added], quoting CJI2d[NY] Culpable Mental States—Intent). The mens rea for "simple" possession is knowing unlawful possession of a loaded firearm. So long as a defendant knowingly unlawfully possesses a loaded firearm before forming the intent to cause a crime with that weapon, the possessory crime has already been completed, and consecutive sentencing is permissible.

■ These cases easily pass this test. All of these defendants clearly possessed the guns they used to commit their crimes well before firing them. For example, Brown and Alvarado were at the Cherry Lounge, where they were frisked for weapons before entering. After leaving, Brown argued with Bradford briefly, but then went to his van. At that point, he must have possessed the gun because between the Cherry Lounge and the McDonald's, there were no stops, and no testimony that the gun was otherwise acquired. It is possible that Brown had already formed the intent to kill Bradford before getting back into the van; however, even if that were the case, the gun must have already been in the van (over which Brown had dominion and control) before he initially encountered Bradford.

■ In Harris's case, the victim, Lewis, fortuitously encountered Harris, whom he observed talking with a group of people for about 20 minutes before Harris approached and shot Lewis as he sat in his car. This is not a case where someone handed Harris a gun just before he shot Lewis—i.e., where the act of possession was simultaneous with the shooting. Rather, there was evidence that Harris possessed the gun for at least the 20 minutes before he shot Lewis.

■ As for Carter, the act of possession was certainly complete while he was talking to Hollifield and her friends in the convenience store. Carter's statement to police showed a general awareness that he was going to participate in a robbery when he went with the group down to the convenience store, although he testified that he did not intend to rob Briggs, just to go along during the robbery in case there was a fight. In any event, Carter was handed the illegal gun later used to murder Briggs as Carter was entering the convenience store some minutes before the murder. At that point, he must have known the gun was to be used in the robbery. And there was a break in the action. Carter stopped in the convenience store while armed to talk to Hollifield and her friends. Only after leaving the store with the group and chasing down Briggs did Carter's possession become for the purpose of intentional murder.

Clearly, the Legislature intended, when it created the "simple" weapon possession crime, to toughen punishment for gun crimes. This reflects the high priority placed by the Legislature on "ridding New York's streets of illegal guns" (Senate Mem in Support of L 2006, ch 742, 2006 McKinney's Session Laws of NY at 2193). And while in most cases where a gun is used to commit a crime, the defendant will be subject to consecutive sentencing, there still exist fact patterns where this will not be the case. In *People v Sturkey* (77 NY2d 979 [1991]), for example, the defendant seized a police officer's gun during a scuffle, waved the gun in the air for a few seconds, either dropped or placed it on the floor and then fled. There, the subsequent robbery and possession charges arose from the same single act—the seizure of the gun. We held that although the defendant was properly convicted of both robbery and criminal possession of a weapon, the sentences for the two offenses were required by Penal Law § 70.25 to be concurrent. This fact pattern would yield the same result today.

Finally, Brown also claims that certain comments made by the prosecutor during summation denied his right to a fair trial, and Harris raises a Fourth Amendment challenge to the search that yielded the gun used in the attack on Lewis. We have examined these additional claims and consider them to be without merit.

Accordingly, the orders of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges GRAFFEO, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur.

In each case: Order affirmed.