People v Harris (2025 NY Slip Op 03419)

People v Harris

2025 NY Slip Op 03419

Decided on June 6, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 6, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., CURRAN, GREENWOOD, AND HANNAH, JJ.

204 KA 23-01689

[*1]THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT,
v
JAMIEN HARRIS, DEFENDANT-RESPONDENT. 

MICHAEL J. KEANE, DISTRICT ATTORNEY, BUFFALO (HARMONY A. HEALY OF COUNSEL), FOR APPELLANT. 
TEXIDO LAW, BUFFALO (NICHOLAS T. TEXIDO OF COUNSEL), FOR DEFENDANT-RESPONDENT. 

 Appeal from an order of the Erie County Court (Kenneth F. Case, J.), dated September 20, 2023. The order granted defendant's motion to dismiss the indictment. 
It is hereby ORDERED that the order so appealed from is reversed on the law, the motion is denied, the indictment is reinstated, and the matter is remitted to Erie County Court for further proceedings on the indictment.
Memorandum: The People appeal from an order granting defendant's motion to dismiss the indictment charging her with murder in the second degree, pursuant to CPL 40.40 (2). The issue raised on this appeal is whether County Court improperly determined that prosecution of the indictment is barred because the conduct underlying previous charges of firearm possession and the conduct underlying the charge of murder were part of the same criminal transaction. For the reasons that follow, we conclude that the court improperly dismissed the indictment, and thus we reverse the order, deny the motion, and reinstate the indictment.
By way of background, on or about November 20, 2021, the 90-year-old victim was shot and killed in her home. When police officers arrived at the scene, defendant, the victim's granddaughter, was found in the house and appeared to be in distress. Defendant gave the officers conflicting accounts of what had happened to her grandmother but consistently stated that there were guns in the house that defendant had been playing with. A pistol and a revolver were recovered from the home. The People presented evidence to a grand jury relating to the two firearms. The evidence included witness testimony from various police officers about the crime scene, including that the victim appeared to have suffered a gunshot wound to the chest and about statements made to them by defendant. Defendant was indicted on two counts of criminal possession of a firearm (Penal Law § 265.01-b [1]), and she pleaded guilty to both counts.
Several months later, the People presented evidence to another grand jury relating to the murder. The People presented similar testimony from the police officers who had testified to the first grand jury as well as additional statements made by defendant. Defendant was indicted on one count of murder in the second degree (Penal Law § 125.25 [1]). Thereafter, defendant filed a motion pursuant to CPL 40.40 (2) to dismiss that indictment. The court granted defendant's motion and dismissed the indictment on the ground that the conduct underlying the charges of firearm possession and underlying the charge of murder were part of the same criminal transaction and the People had legally sufficient evidence at the time of defendant's guilty plea to convict defendant of murder. On appeal, the People first contend that the conduct underlying the charges of firearm possession was not part of the same criminal transaction as the conduct underlying the murder charge. We agree with the People.
"CPL 40.40 prohibits a separate prosecution of joinable offenses that arise out of the [*2]same transaction and involve different and distinct elements under circumstances wherein no violation of the double jeopardy principle can validly be maintained but the equities nevertheless seem to preclude separate prosecutions" (People v DeProspero, 91 AD3d 39, 43 [4th Dept 2011], affd 20 NY3d 527 [2013]). Under CPL 40.40 (1), "[w]here two or more offenses are joinable in a single accusatory instrument against a person by reason of being based upon the same criminal transaction, . . . such person may not, under circumstances prescribed in this section, be separately prosecuted for such offenses." A "criminal transaction" is defined as "conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture" (CPL 40.10 [2]). "When (a) one of two or more joinable offenses [that are joinable in a single accusatory instrument against a person by reason of being based upon the same criminal transaction] is charged in an accusatory instrument, and (b) another is not charged therein, or in any other accusatory instrument filed in the same court, despite possession by the [P]eople of evidence legally sufficient to support a conviction of the defendant for such uncharged offense, and (c) either a trial of the existing accusatory instrument is commenced or the action thereon is disposed of by a plea of guilty, any subsequent prosecution for the uncharged offense is thereby barred" (CPL 40.40 [2]; see People v Tabor, 87 AD3d 829, 831 [4th Dept 2011]). Under the facts and circumstances of this case, we conclude that the conduct related to possession of the firearms and that related to the murder involved separate and distinct criminal acts that were not part of the same criminal transaction (see generally People v Brown, 21 NY3d 739, 751 [2013]; People v Clinton, 222 AD3d 1427, 1428-1429 [4th Dept 2023], lv denied 41 NY3d 1017 [2024]; People v Batista, 282 AD2d 825, 826 [3d Dept 2001], lv denied 96 NY2d 825 [2001]). Thus, the murder count was properly charged on a separate accusatory instrument and the People did not violate CPL 40.40.
In light of our determination, the People's remaining contentions are academic.
All concur except Lindley, J.P., who dissents and votes to affirm in the following memorandum: I respectfully dissent. In my view, County Court properly granted defendant's motion to dismiss the indictment charging murder in the second degree pursuant to CPL 40.40 (2), which "prohibits separate prosecutions for offenses arising out of the same criminal transaction, if they are joinable in one accusatory instrument" (People v Ruzas, 54 AD2d 1083, 1084 [4th Dept 1976]) and "involve different and distinct elements under circumstances wherein no violation of the double jeopardy principle can validly be maintained but the equities nevertheless seem to preclude separate prosecutions" (People v DeProspero, 91 AD3d 39, 43 [4th Dept 2011], affd 20 NY3d 527 [2013] [internal quotation marks omitted]).
As the court determined, prosecution of the murder charge is barred by CPL 40.40 (2) because it is joinable under CPL 200.20 (2) (a) with the criminal possession of a firearm offenses charged in the prior indictment, and the People possessed legally sufficient evidence to support a murder conviction against defendant when she pleaded guilty to the firearm offenses. Where, as here, "the evidence against a person is in the prosecutor's hands, [they] may not—as a player in a game of chance—deal out indictments one at a time" (Matter of Auer v Smith, 77 AD2d 172, 189 [4th Dept 1980], lv dismissed 52 NY2d 1070 [1981]; see People v Tabor, 87 AD3d 829, 831 [4th Dept 2011]; People v Lindsly, 99 AD2d 99, 102 [2d Dept 1984]).
The majority accurately sets forth the relevant statutory authority. CPL 40.40 (2) reads: "When (a) one of two or more joinable offenses of the kind specified in [CPL 40.40 (1)] is charged in an accusatory instrument, and (b) another is not charged therein, or in any other accusatory instrument filed in the same court, despite possession by the people of evidence legally sufficient to support a conviction of the defendant for such uncharged offense, and (c) either a trial of the existing accusatory instrument is commenced or the action thereon is disposed of by a plea of guilty, any subsequent prosecution for the uncharged offense is thereby barred."
CPL 40.40 (1) refers to joinder under CPL 200.20 (2) (a), which, as relevant here, provides that offenses are joinable when "[t]hey are based upon the same act or upon the same criminal transaction, as that term is defined in [CPL 40.10 (2)]." CPL 40.10 (2), in turn, defines a criminal transaction as "conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and [*3]circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture." In a nutshell, CPL 40.40 "applies only to offenses that are joinable on the ground that they arise from a single criminal transaction" (DeProspero, 91 AD3d at 43) and only where the People had legally sufficient evidence to support a conviction of the defendant for the second offense when a trial began on the first offense or the defendant pleaded guilty to the first offense (see Tabor, 87 AD3d at 831).
Here, the People possessed legally sufficient evidence to support a conviction of murder in the second degree against defendant at the time she pleaded guilty to criminal possession of a firearm as charged in the initial indictment. Indeed, defendant was alone in the house when her grandmother's body was found in the living room next to a revolver. The forensic evidence showed that the victim had been shot once in the chest with a bullet from that revolver, and defendant admitted to the police that she fired a shot in the direction of the victim and may have hit her. Defendant also said, "I think the gun that killed grandma is the gun that I played with." Accepted as true, this evidence "would establish every element of [murder in the second degree] and the defendant's commission thereof" (CPL 70.10 [1]; see People v Danielson, 9 NY3d 342, 349 [2007]).
The only evidence obtained by the People after defendant's guilty plea was the results of tests showing that the major DNA profile obtained from a swab of the revolver matches defendant's DNA profile. Although the DNA evidence no doubt incriminated defendant in the homicide, it was equally incriminating with respect to the count of the prior indictment charging her with possessing the revolver. Regardless, with or without the DNA test results, the evidence was legally sufficient to support a conviction for both murder and possession of the revolver even without the DNA evidence. The fact that defendant gave conflicting statements to the police regarding her involvement in the homicide does not affect the sufficiency of the evidence, which must be viewed in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621 [1983]).
Defendant's statutory double jeopardy claim therefore turns on whether the offenses of murder and possession of a firearm were joinable in a single accusatory instrument under CPL 200.20 (2) (a). Stated otherwise, the question presented is whether the two offenses are based on "the same criminal transaction" (CPL 200.20 [2] [a]; see CPL 40.10 [2]). The relevant inquiry is whether, based on the evidence presented to the grand jury that issued the initial indictment, defendant's possession of the revolver arose from the same criminal transaction as the homicide.
In opposition to defendant's motion, the People asserted in County Court that "defendant's possession of the firearm had continuously occurred for months prior to the homicide, and defendant used at least one of the firearms the evening before her arrest when she shot through the window" (emphasis added). The People argued that defendant's simple possession of the firearm and her shooting of the victim "constituted acts that had occurred at different times and could have inflicted different harms ([i.e.,] the destruction of the windows as opposed to defendant shooting her grandmother)."
During oral argument on appeal, however, the People conceded, as they must, that defendant's possession of the revolver, as charged in the initial indictment, occurred after the murder, even though she may have made statements to the police indicating that she possessed the revolver prior to the murder. This is so because the initial indictment, consistent with the evidence presented to the grand jury, alleges that defendant possessed the revolver on November 21, 2021, while the second indictment alleges that she committed the murder on November 20, 2021.
I note in any event that there was no evidence presented to the first grand jury that defendant possessed the revolver before November 21, 2021, when the police arrived at the house late in the morning and found defendant alone with her grandmother's body and the revolver in the living room. Nor was any evidence presented that defendant used the revolver to shoot out the windows of the house either before or after the homicide. The only evidence presented to the grand jury of defendant's physical possession of the revolver consisted of statements she made to a homicide detective. Specifically, the detective testified that defendant said that she had been playing with a gun and added, "I think the gun that killed grandma was the [*4]gun that I played with."
Again, however, we are concerned here only with defendant's post-shooting possession, and the People presented no evidence to either grand jury that defendant physically possessed the revolver after using it to shoot her grandmother. Thus, defendant's post-shooting possession of the revolver must be based on a theory of constructive possession, which was charged to the initial grand jury. Because defendant remained in the house with the revolver after the shooting, she no doubt constructively possessed the weapon up until the time the police arrived and removed her from the premises. But defendant's constructive possession of the revolver was a continuous crime that began when she last entered the house (see generally Matter of Johnson v Morgenthau, 69 NY2d 148, 151-152 [1987]; People v Hills, 234 AD3d 1311, 1312 [4th Dept 2025], lv denied — NY3d — [2025]).
In the absence of evidence that defendant left the house after shooting her grandmother, it necessarily follows that her possession of the revolver with intent to use it unlawfully against her grandmother overlapped with her constructive possession of the weapon. Under the circumstances, I conclude that defendant's possession of the revolver and her alleged use of it to kill her grandmother are "so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident" (CPL 40.10 [2] [a]).
In their post-argument submission, the People contend that the criminal possession of a firearm charges were based on evidence of observations of defendant made by the police in the residence on November 21, 2021, when the guns were discovered, while the "act of homicide occurred on November 20, 2021 and was completed the day before defendant was caught in possession of the weapon." However, there was no evidence presented to the initial grand jury as to when the homicide was committed. Due to the manner in which the case was presented to the grand jurors, we have no way of knowing the basis of their finding that defendant possessed the revolver. We do know, however, that there was no evidence presented to the first grand jury that the victim was killed the day before the police arrived at the house.
Both the People and the majority rely on People v Brown (21 NY3d 739, 751 [2013]), where the Court of Appeals held that consecutive sentences are lawful for "simple" knowing, unlawful possession of a loaded firearm (i.e., without any intent to use) and another crime committed with the same weapon, if "a defendant knowingly unlawfully possesses a loaded firearm before forming the intent to cause a crime with that weapon." The Court's focus in Brown was on "the separateness of acts" (id. at 750). The Court reasoned that, because each defendant's possession of a firearm and his subsequent use of that weapon to commit a crime were separate acts, consecutive sentencing did not run afoul of Penal Law § 70.25 (2), which mandates concurrent sentences "[w]hen more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which itself constituted one of the offenses and was also a material element of the other."
Although Brown may allow for consecutive sentencing here if defendant were convicted of murder and criminal possession of the firearm used in the homicide, as those two crimes were based on separate acts, the "separate acts" analysis for sentencing purposes does not illuminate the question whether the two offenses are separate acts based on the same criminal transaction and thus joinable under CPL 200.20 (2) (a). In other words, while consecutive sentencing was permitted in Brown, it does not necessarily follow from that holding that defendant could have been prosecuted separately for the two offenses. The People cite no reported cases where a defendant has been prosecuted separately with possessing a firearm and using the same firearm to commit a crime.
As the court below determined, to allow separate prosecutions in this case "would permit prosecutors to always pursue and conclude weapons possession charges in advance of murder charges, creating the piece-meal prosecutions CPL [ ] 40.40 expressly forbids." I would go a step further. Allowing separate prosecutions for murder and criminal possession of a firearm in this case will allow separate prosecutions for a defendant's simple possession of a weapon and their possession of the same weapon with intent to commit a crime with it. In fact, under the People's theory, they could have prosecuted defendant separately for three counts of criminal possession of a firearm with respect to the revolver: one arising from defendant's possession of the revolver [*5]in the house before she allegedly used it to shoot her grandmother, a second arising from her possession of the revolver to shoot her grandmother, and the third arising from her possession of the revolver in the house following the shooting. Successive prosecutions of that kind are simply incompatible with the
statutory double jeopardy provisions of CPL 40.40. I would thus affirm.
Entered: June 6, 2025
Ann Dillon Flynn
Clerk of the Court