People v Billups (2026 NY Slip Op 01589)

People v Billups

2026 NY Slip Op 01589

Decided on March 19, 2026

Court of Appeals

Garcia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 19, 2026

No. 24 

[*1]The People & c., Respondent,
vRicky Billups, Appellant.

Victorien Wu, for appellant. 
Stephen J. Kress, for respondent. 

GARCIA, J.:
Defendant was sentenced as a second violent felony offender to 15 years in prison on his conviction for simple possession of a weapon, to run consecutively to concurrent prison terms on felony murder and robbery convictions, for an aggregate sentence of 40 years to life. He contends that because the People failed to establish that he formed the intent to rob the victim after his acquisition of the weapon, consecutive sentences were not authorized under Penal Law § 70.25. We hold that consecutive sentences were lawfully imposed and therefore affirm.
Defendant, his codefendant Sharife Moses, and several co-conspirators arranged to rob a local drug dealer, after which defendant obtained a gun from an acquaintance. On the day of the incident, defendant walked approximately fifteen blocks with the weapon to the apartment of a co-conspirator, where he placed it under a bed in a room as the group continued to plan the robbery. Later that evening, when defendant and Moses arrived at the intended victim's building where a pretextual drug sale had been arranged, the intended victim became suspicious and called his brother. The robbery did not go as planned and instead the intended victim's brother was robbed, shot, and killed. Following the shooting, defendant, Moses and another co-conspirator met at a prearranged spot where Moses displayed the victim's phone and wallet, and defendant stated that he shot the victim three to five times when the victim tried to grab the gun. Defendant and Moses were convicted after trial of felony murder (Penal Law § 125.25 [3]), first and second-degree robbery (Penal Law § 160.15 [2], § 160.10 [1]), and simple weapon possession (Penal Law § 265.03 [3]).
At sentencing, the People requested that each defendant's sentence for their simple possession charges run consecutively to their remaining charges, for an aggregate sentence of 40 years to life. The trial judge agreed and sentenced both defendants accordingly. On appeal, the Appellate Division affirmed, holding that the consecutive [*2]sentences were lawful and declining defendant's request to run those sentences concurrently in the interest of justice (233 AD3d 492 [1st Dept 2024]). A Judge of this Court granted leave to appeal (43 NY3d 1006 [2025]).
Penal Law § 70.25 (2) governs consecutive sentencing, providing that "[w]hen more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences . . . must run concurrently." Otherwise, the decision to impose consecutive sentences is a matter of discretion; the statute provides that "when multiple sentences of imprisonment are imposed on a person at the same time . . . the sentence or sentences imposed by the court shall run either concurrently or consecutively . . . in such manner as the court directs at the time of sentence" (Penal Law § 70.25 [1]).
To determine whether consecutive sentences are permitted, a sentencing court must first examine the statutory elements of the crimes and determine whether those elements overlap "under either prong" of Penal Law § 70.25 (2) and, if they do, "the People may yet establish the legality of consecutive sentencing by showing that the 'acts or omissions' committed by defendant were separate and distinct acts" (People v Laureano, 87 NY2d 640, 643 [1996] [making clear it is the People's burden to establish the legality of consecutive sentences]). That is, where sufficient evidence of separate and distinct acts is presented by the People, "consecutive sentences are possible regardless of whether the statutory elements of the offenses overlap" (People v Salcedo, 92 NY2d 1019, 1021 [1998]).
As the People concede, the convictions at issue here have overlapping material elements. Penal Law § 125.25 (3) provides that a defendant is guilty of second degree murder if "he commits . . . robbery . . . and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant . . . causes the death of a person other than one of the participants." Penal Law § 160.15 (2) provides that "[a] person is guilty of robbery in the first degree when he forcibly steals property and when, in the commission of the crime or of immediate flight therefrom, he . . . is armed with a deadly weapon." Penal Law § 265.03 (3), known as 'simple' weapon possession, prohibits possession of a loaded firearm outside one's home or place of business. This statute is distinct from those criminalizing possession with a specific intent, which includes possessing a loaded firearm "with intent to use the same unlawfully against another" (Penal Law § 265.03 [1]). Whatever the overlap, however, we conclude that the People met their burden of establishing that the defendant's acts here were separate and distinct and therefore the consecutive sentences imposed were legal.
Evaluating whether a defendant's acts were separate and distinct "in the context of weapon possession offenses" requires a different analytical approach due to the "heightened level of integration between the possession and the ensuing substantive crime for which the weapon was used" (People v Wright, 19 NY3d 359, 365 [2012]). That approach in turn has two distinct applications depending on whether the weapons possession charge at issue contains an intent element. For consecutive sentencing in the context of a charge of possession with unlawful intent, this Court has emphasized the need to consider "when one act of possession ends and another begins" and has explained that a sentencing judge must "look to the point at which the relevant intent changes" (id. at 366).
In Wright, defendant was convicted of possessing a loaded firearm "with the intent to use the same unlawfully against another" (Penal Law § 265.03 [1] [b]) and murder (Penal Law § 125.27 [1] [a] [viii]), where the evidence showed that defendant "pulled out a gun and shot" two victims (19 NY3d at 361). This Court applied the intent-based analysis described above, explaining that because defendant was charged with possession of a weapon with the intent to use it unlawfully, defendant's "possession [needed to be] marked by an unlawful intent separate and distinct from his intent to shoot the victims" for consecutive sentences to be permissible (id. at 367). Noting that the People sought to prove possession with intent by pointing to the fact that he " 'actually did use the gun unlawfully' " when he shot the two victims, we held that "the People neither alleged nor proved that defendant's possession was marked by an unlawful intent separate and distinct from his intent to shoot the victims" and so "Supreme Court erred in imposing consecutive sentences" (id. at 367).Wright made clear that the analysis would be different in a situation involving a conviction under a simple possession statute that "defines the crime solely in terms of dominion and control" (id. at 366-367). Three such scenarios were considered by the Court one year later in People v Brown, where this Court addressed "whether a sentence imposed for 'simple' knowing, unlawful possession of a loaded weapon (i.e., without any intent to use) was properly run consecutively to the sentence for another crime committed with the same weapon" (21 NY3d 739, 744 [2013]). We held that because "these three defendants completed the crime of possession independently of their commission of the later crimes, . . . consecutive sentencing was permissible" (id.). There, each defendant argued that consecutive sentences were prohibited because "possession was subsumed within use" (id. at 749). But in each case, [*3]we determined that the People proffered sufficient evidence for the Court to conclude that the "defendants clearly possessed the guns they used to commit their crimes well before firing them": in Brown, defendant had "dominion and control" over the gun before he encountered the victim; in Harris, defendant "fortuitously" encountered the victim and "possessed the gun for at least the 20 minutes before he shot" him; and in Carter, defendant was handed the gun and "stopped in a convenience store while armed to talk to" acquaintances "some minutes" before the murder (id. at 751). This evidence was sufficient to show that the possessory act was separate and distinct from the substantive crime, meriting consecutive sentences.
The same is true here. The People demonstrated that defendant's possession of the gun in violation of Penal Law § 265.03 (3) was an act distinct from the commission of the robbery. Defendant obtained the gun, at minimum, more than one hour before the robbery, carried it across approximately 15 city blocks, and placed it under a bed in a co-conspirator's home for "a little while" before eventually retrieving the gun and walking over to the intended victim's building. Evidence that defendant obtained the gun and then used it to commit the substantive crime provided a sufficient basis for the sentencing judge to impose consecutive sentences. As in Harris, " '[t]he evidence clearly established that defendant was carrying the weapon at the time he encountered and shot the victim,' " and therefore " 'the act of possession was complete before the shooting, and consecutive sentences were authorized by' " the statute (21 NY3d at 747, quoting People v Harris, 96 AD3d 502, 503 [1st Dept 2012]).
Defendant relies on a single sentence from Brown, which he reads as implying that the People must show that the gun was obtained before the intent to commit a crime with it was formed (id. at 751 ["(s)o long as a defendant knowingly unlawfully possesses a loaded firearm before forming the intent to cause a crime with that weapon, the possessory crime has already been completed, and consecutive sentencing is permissible"]), and maintains that the timing of the formation of that intent provides the relevant framework for analyzing simple possession cases. While this language in isolation may have caused some confusion (see e.g. People v Graham, 215 AD3d 998, 1010 [3d Dept 2023]; People v Michel, 144 AD3d 948, 949 [2d Dept 2016]), the analysis in Brown establishes that this approach is not applicable where only simple possession is involved. When assessing the legality of consecutive sentences for a defendant convicted of possession of a weapon with intent to use it unlawfully and a substantive crime with a possessory element, the relevant inquiry is when the defendant formed the intent to commit the substantive crime. But in cases of simple possession, the relevant inquiry is when the act of possession was complete, determined by whether the People proffered sufficient evidence to conclude that the defendant obtained "dominion and control" over the weapon before committing the substantive crime (id. at 751; see Wright, 19 NY3d at 366-367)[FN*].
As a result, as we explained in Brown, where the charge is simple possession, "in most cases where a gun is used to commit a crime, the defendant will be subject to consecutive sentencing, [but] there still exist fact patterns where this will not be the case" (21 NY3d at 752). Two scenarios mentioned in Brown where consecutive sentencing would not be authorized are instructive. One such fact pattern was taken from People v Sturkey, where weapon possession and robbery charges arose from one distinct act—the defendant's seizure of a police officer's gun (77 NY2d 979 [1991]). The second was offered as a comparison to the facts in Harris, where the defendant possessed the gun for at least 20 minutes prior to shooting the victim (21 NY3d at 751). "This is not a case," the Court explained, "where someone handed Harris a gun just before he shot Lewis—i.e. where the act of possession was simultaneous with the shooting" (id. [emphasis added]). In both Sturkey and the hypothetical used to distinguish the facts in Harris, possession and the substantive offense occurred virtually simultaneously, and so the defendant in each case would not be eligible for consecutive sentences. "Clearly, the Legislature intended, when it created the 'simple' weapon possession crime, to toughen punishment for gun crimes. This reflects the high priority placed by the Legislature on 'ridding New York's streets of illegal guns' " (id. at 752, quoting Senate Mem in Support of L 2006, ch 742, 2006 McKinney's Session Laws of NY at 2193). Our different approaches to consecutive sentences in Wright and Brown are consistent with this legislative intent.
We note that even where permissible, the imposition of consecutive sentences is discretionary (see People v Truesdell, 70 NY2d 809, 811 [1987]). And where a sentencing judge has exercised that discretion and run a simple [*4]weapon possession charge consecutively with other crimes, it remains within the Appellate Division's interest of justice jurisdiction to reduce that sentence, based on the individual circumstances of each defendant, as it did with co-defendant here (see People v Moses, 155 AD3d 476, 476-477 [1st Dept 2017] [affirming the legality of consecutive sentences, but modifying co-defendant's sentences to run concurrently in the interest of justice]).
Finally, we reject defendant's challenge to the trial court's Sandoval ruling. Initially, defendant's argument with respect to the subject of his youthful offender adjudication is unpreserved. As for his remaining challenges, the trial court's Sandoval ruling is "largely, if not completely a discretionary determination for the trial courts and fact-reviewing intermediate appellate courts, and . . . generally no further review by this Court is warranted" (People v Williams, 12 NY3d 726, 727 [2009] [internal quotation marks and citations omitted]). Defendant simply disagrees with the outcome, and "[s]uch a disagreement does not furnish a cognizable ground for intervention by this Court" (People v Walker, 83 NY2d 455, 459 [1994]).
Accordingly, the order of the Appellate Division should be affirmed.
Order affirmed. Opinion by Judge Garcia. Chief Judge Wilson and Judges Rivera, Singas, Cannataro, Troutman and Halligan concur.
Decided March 19, 2026

Footnotes

Footnote *: In cases involving consecutive sentencing for "two possessory offenses, simple possession and possession with intent to use" rather than simple possession and an ensuing substantive crime, as is the case here, consecutive sentencing is prohibited where the "offenses' actus rei are the same" as described in People v Lewis ( __ NY3d __ [2026] [decided today]).